OAKES, Circuit Judge
(concurring in part and dissenting in part):
I do not disagree with the substance of the majority opinion. What the law firms did here was not only stupid, it was reprehensible. They entered into a fee-splitting arrangement contrary to the Bankruptcy Rules, behind the court’s back, and, despite numerous occasions on which they could have disclosed the arrangement, they carefully kept it concealed.
Nor do I quarrel with the disposition as to the Arutt firm; as general counsel for the debtor, they benefited monetarily from the fee-splitting arrangement. Presumably Arutt established the arrangement because it sent the debtor’s business problems with the Government to the Israel firm; Arutt treated its split as forwarding fees, which used to be charged years ago by many law firms with hardly a second thought as to the ethical implications. But in today’s world, Arutt should have known better. They were properly required by the court to return to Futuronics the unauthorized fees that they received, and the further requirement that they forego any and all compensation whatsoever certainly cannot be labeled an abuse of discretion. Indeed, I fully agree with the majority on this point.
But I would treat the Israel firm somewhat differently. Even though their conduct was probably equally egregious on the scale of legal ethics, they nevertheless were performing substantial services for the bankrupt and were foregoing fees earned, rather than pocketing additional fees, in order to pay Arutt. Israel was a two-man firm, so expert in their field that they recovered $4.650 million for the debtor and induced the Government to withdraw an $8 million-plus claim against Futuronics and relieve Futuronics of potential liabilities to subcontractors. All of this work by Israel enabled Futuronics to propose a plan to pay its creditors 100 cents on the dollar. In fact, Israel did its job so well that the bankruptcy judge was willing to allow them $850,000 in fees, which included a $210,000 bonus for the four years of work that they performed. The actual penalty imposed upon them by the bankruptcy judge was $190,000.
I am a believer in the principle that the punishment should fit the crime, that our time-honored tradition of fairness and justice requires court-imposed sanctions to be proportional to the wrong committed. I explained this point of view at no little length in a dissent in Carmona v. Ward, 576 F.2d 405, 417 (2d Cir. 1978), cert. denied, 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 58 (1979), and I believe that the same principle should hold true on the civil side. I realize that my proportionality view was in a real sense rejected by the Supreme Court in Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), but that was in the constitutional context of penalties set by a legislature. I view Rummel v. Estelle as resting in large part upon a concept of deep judicial deference to legislative penalty-setting, at least where capital punishment is not involved.[1]
Here, however, we are dealing strictly with judicial discretion. Bankruptcy Rule 219(d) provides that if a person violates the restriction on fee sharing, “the court may deny him compensation” or “may enter such other order as may be appropriate.” (Emphasis added.) In this regard it is interesting to note that Rule 219(d), which harmonizes bankruptcy practices with Canon 34 of the Canons of Professional Ethics and Disciplinary Rule 2-107 of the Code of Professional Responsibility, displaces section 62(c) of the Bankruptcy Act, which permitted the sharing of compensation by the working attorney with the forwarding attorney. Although the rules have been in effect since 1973, and the Israel firm cannot disavow knowledge of them, nevertheless the practice now condemned is one that for many years was condoned.
I do think that Bankruptcy Judge Lesser leaned over backwards to reward the Israel firm for its concededly extensive and suc *473 cessful work. But I have reluctantly concluded that the district judge and the majority have gone just as far the other way in leaning over to punish the Israel firm for their wrongful acts of paying some $60,000 in forwarding fees to the Arutt firm and not disclosing their arrangement to the bankruptcy court. In this regard I would wholly distinguish this case from the one particularly relied upon by Judge Duffy, In re Arlan’s Department Stores, Inc., 615 F.2d 925 (2d Cir. 1979). Here the only arrangement not disclosed to the court was the $60,000 in “forwarding fees.” In Arlan’s there was no disclosure of a wide variety of fees and arrangements — a $125,000 retainer, id. at 934-37; a $5,000 payment, id. at 937-38; a $25,000 retainer, id. at 938-39; a $40,000 payment, id. at 941-42; and a $21,-088.50 reimbursement for expenses, id. at 942. In Arlan’s the payment of the initial retainer of $125,000 left the debtor without cash to operate, id. at 935-36, and this alone was improper. In short, in Arlan’s there was “a total pattern of conduct which betray[ed] a callous disregard of the professional obligations undertaken in these bankruptcy proceedings.” Id. at 943. Here, although there was a serious breach of duty, so far as appears otherwise the Israel efforts were totally dedicated to the best interests of the debtor and its creditors.
I would certainly not make a rule of law depend upon the outcome to the bankrupt. In other words, I agree with the majority that the evil to the public interest is in the tendencies, first, for the fee applicant to claim a compensation high enough to make his own share in it worthwhile and, second, for the debtor’s counsel who receives a fee division not to object to the court regarding the extravagance of the applied for fees. At the same time, in the exercise of the discretion to impose a penalty and on the basis of the principle that the punishment should fit the crime, it strikes me that to deprive the Israel firm of all compensation and to require them to return the sums already received is somewhat equivalent to chopping off an arm for stealing a basket of olives.
In calculating Israel’s fees, Bankruptcy Judge Lesser began with the approximately 6,400 hours spent by the firm, fixed a “lodestar” rate of $100 per hour, and in the absence of the Rule 219 violation would have awarded them an additional $400,000 under the teachings of City of Detroit v. Grinnell Corp., 560 F.2d 1093 (2d Cir. 1977). Judge Lesser reduced that $400,000 by $190,000, and against the $850,000 total of course credited the $218,380 (some $60,000 of which had gone to Arutt) previously received for services. This left the Israel firm with a net payment of $631,620.
I would mete out twenty lashes, neither chopping off the arm nor tapping the wrist. If the bankruptcy judge thought that $640,-000 was a proper starting rate, I would award no bonus and cut the fee in half to $320,000, against which I would credit the $218,380 already paid. For a two-man firm, exercising high skills and hard effort, and spending between three and four years of time on a case which will probably culminate in the creditors getting 100 cents on the dollar, it would seem to me that a $320,000 punishment would better fit the crime. Others, I know, think differently and I would be the last to suggest that they are not reasonable men.

. See Nesson, Rationality, Presumptions, and Judicial Comment: A Response to Professor Allen, 94 Harv.L.Rev. 1574, 1580-81 (1981).